**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

|  |  |  |
|---|---|---|
| | : | |
| AMERICAN AUTOMOBILE | : | |
| INSURANCE COMPANY, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 08-1680 |
| | : | |
| TYRONE MURRAY and TYRONE | : | |
| MURRAY d/b/a/ OLNEY BUSINESS | : | |
| CENTER; ENNIE, INC. d/b/a SAM'S | : | |
| BEER DISTRIBUTOR; and JAMES S. | : | |
| EASTER JR., INDIVIDUALLY AND AS | : | |
| THE ADMINISTRATOR OF THE | : | |
| ESTATE OF JESSICA LYNNE EASTER, | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                   **DECEMBER 15, 2008**

Presently before this Court are Cross-Motions for Summary Judgment, pursuant to Fed.

R. Civ. P. 56, filed by Plaintiff American Automobile Insurance Company ("AAIC") and

Defendant James S. Easter, Jr. ("Easter").  For the following reasons, AAIC's Motion will be

granted, and Easter's Motion will be denied.

**I.      BACKGROUND**

On or about October 25, 2006, Easter filed a Complaint styled James S. Easter Jr.,

individually and as Administrator of the Estate of Jessica Lynne Easter v. Ennie, Inc. d/b/a Sam's

Beer Distributor and Steven L. Meloni, in the Philadelphia County Court of Common Pleas,

October Term, 2006, No. 003439 (the "Easter Lawsuit" or "Easter Complaint").  (Pl.'s Mot.

Summ. J. Ex. A.)  In his Complaint, Easter alleges that on March 23, 2006, Ennie, Inc. ("Ennie") illegally sold alcohol to Gary Grato, Jr., then nineteen years old.  Grato then supplied that alcohol to Stephen Meloni, also then nineteen years of age.  (Id.  ¶¶ 13-18.)  The Complaint further alleges that, on March 24, 2006, after consuming alcohol, Meloni negligently drove a vehicle while intoxicated and hit a pole, causing the death of one of his passengers, Jessica Lynne Easter. (Id. ¶¶ 35-38.)

Ennie subsequently tendered its defense and indemnity to the Easter Lawsuit to its general liability insurer, Century Surety Company ("Century").  (Pl.'s Mot. Summ. J. Ex B ¶¶ 24-25.) Century provided Ennie with a defense under a reservation of rights and filed a declaratory judgment complaint against Ennie in the United States District Court for the Eastern District of Pennsylvania.  (Pl.'s Mot. Summ. J. Ex. B.)  On July 6, 2007, the court granted summary judgment in favor of Century, declaring that Century owed Ennie no defense or indemnification for the Easter Lawsuit because the Century insurance policy in effect for the period December 9, 2005 to December 9, 2006 contained a liquor liability exclusion.  See Century Sur. Co. v. Ennie, Inc., No. 06-5281, 2007 U.S. Dist. LEXIS 49565 (E.D. Pa. July 6, 2007).

Consequently, on or about November 27, 2007, Ennie filed a Complaint against Tyrone Murray ("Murray") styled Ennie, Inc. d/b/a Sam's Beer Distributor v. Tyrone Murray and Tyrone Murray d/b/a Olney Business Center, in the Philadelphia County Court of Common Pleas, November Term, 2007, No. 003083 (the "Ennie Lawsuit").  (Pl.'s Mot. Summ. J. Ex. D.)  In its Complaint, Ennie alleges that Murray negligently failed to place liquor liability insurance coverage for Ennie.  (Id. at 3-4.)  Ennie alleges that, on or about August 23, 2000, through its principal, Thai Poeng ("Poeng"), Ennie consulted Murray for the purpose of obtaining insurance

that would protect it against all risks arising from the operation of a beer distributorship where alcoholic beverages are sold to the public.  (Id. ¶ 5.)  Ennie further alleges that Murray sold it an insurance policy issued by Century which Murray represented protected Ennie from all risks that might arise from operating such a business.  (Id. ¶ 6.)  Ennie asserts that Murray caused the same or similar policy to be renewed with identical coverages on the anniversary date of the policy, December 9, up to and including the December 9, 2005 renewal of the Century policy that was in effect on March 24, 2006.  (Id. ¶ 7.)  In an affidavit submitted in support of Century's Motion for Summary Judgment against Ennie, a representative from insurance broker USG Insurance Services ("USG") confirmed that USG placed commercial general liability insurance with Century for Ennie from 2002 to 2006, and that all communication related to the placement of Century insurance for Ennie occurred between USG employees and Murray.  (Pl.'s Mot. Summ. J. Ex. E ¶¶ 3-4.)

Ennie alleges that it delivered the Easter Complaint to Murray and that Murray advised Ennie that the Century insurance policy placed by Murray adequately covered Ennie.  (Pl.'s Mot. Summ. J. Ex. D ¶ 11.)  Because the court determined that Century owed no defense or indemnity to Ennie for the Easter Lawsuit, Ennie alleges that Murray, as a licensed commercial insurance agent, assumed the duty to properly advise his clients as to potential risks that might arise from the operation of their respective businesses against which insurance was available and necessary. Furthermore, it alleges that Murray breached his duty when he failed to advise Ennie of the necessity or availability of liquor liability coverage.  (Id. ¶¶ 14-16.)  Ennie further asserts that, as a direct result of Murray's actions, Ennie was (1) required to pay the costs of its own defense to the Easter Complaint; (2) has been subjected to a potential adverse judgment arising out of the

3

Easter Lawsuit; and (3) may potentially be ordered to repay any fees and costs which Century expended on Ennie's behalf.  (Id. ¶ 16.)

AAIC's Interrogatory No. 5 to Ennie in this matter is as follows:  "State the dates that you had any communications with Murray, identify all such communications, identify all persons that participated in any such communications, and describe all facts of such communications."  (Pl.'s Mot. Summ. J. Ex. F 8.)  Ennie's response to AAIC's Interrogatory No. 5 confirms that Poeng consulted with Murray for placement of liability coverage from 2000 to 2006.  (Pl.'s Mot. Summ. J. Ex. G ¶¶ 5-6.)  Murray, when deposed in the Century declaratory judgment action and again in the present matter, confirmed that he personally spoke with Poeng every year at renewal.  (Pl.'s Mot. Summ. J. Ex. H 82, 97-98; Ex. I 21.)  Murray confirmed that Poeng renewed the Century policy that was in effect during March 2006 in December 2005, and confirmed that he did not sell Ennie liquor liability coverage at the December 2005 renewal.  (Pl.'s Mot. Summ. J. Ex. I 65-66.)  Murray further confirmed that Poeng visited him on December 7, 2005, and identified a receipt Murray authored, verifying that Ennie paid a portion of the 2006 Century policy premium on that date.  (Pl.'s Mot. Summ. J. Ex. I 79-80; Ex. J.)  Murray testified that he and Poeng never discussed liquor liability coverage in 2005, and that the first time they discussed it was in 2006.  (Pl.'s Mot. Summ. J. Ex. I 59, 100-01.)

AAIC issued Policy No. 8-17 ME 07318264, a "claims made and reported" errors and omissions liability policy, to The Agents & Brokers of Infinity Property Casualty Corp. ("Infinity"), effective from January 1, 2007 to January 1, 2008.  (Pl.'s Mot. Summ. J. Ex. L.) The AAIC policy was a renewal of Policy No. 8-17 ME 07318222, issued to Infinity for the period from January 1, 2006 to January 1, 2007 (the "AAIC Policy").  (Pl.'s Mot. Summ. J. Ex.

4

M.)  AAIC's Interrogatory No. 7 to Murray in this matter is as follows:  "Identify all errors and omissions insurance policies issued to you from January 1, 2000 through January 1, 2008, and state the dates that such policies were in effect."  (Pl.'s Mot. Summ. J. Ex. N.)  Murray's testimony and his response to Interrogatory No. 7 confirm that he was first insured by AAIC under the policy in effect from January 1, 2006 to January 1, 2007.  (Pl.'s Mot. Summ. J. Ex. I 31; Ex. O ¶ 7.)  Murray enrolled for coverage under the AAIC Policy on-line and pursuant to his contract as an insurance agent with Infinity.  (Id.)  The AAIC Policy contains the following language:

**I. COVERAGE**

**A. Insuring Agreements**

**1. Agents Errors and Omissions Liability**

> We will pay on the **Agent's** behalf all Loss which such **Agent** is legally obligated to pay as a result of a **Claim** first made against such **Agent** or its **Agency/Agency Staff** and reported to **Us** during the **Policy Period** in accordance with Section VI. Conditions 1.2., provided that such **Claim** is for a **Wrongful Act** in the rendering of or failure to render **Professional Services** in connection with a **Covered Product** if that **Wrongful Act** occurs wholly after the **Retroactive Date**.[1]
> ....

> **Q. Wrongful Act**, either in singular or plural, means:

---

[1] It is generally recognized that the purpose of the retroactive date is to narrow the scope of coverage otherwise provided by a claims-made policy.  See Pritchard v. Federated Mut. Ins. Co., No. 93-2765, 1995 WL 854775, at *9 (W.D. Tenn. Oct. 2, 1995) (citing Long, *The Law of Liability Insurance*, §§ 12A.05[3], 12A-63 (1989)).  In order to minimize their exposure, many insurers provide that they only cover claims arising out of acts occurring subsequent to the inception of the policy or subsequent to some earlier date, generally referred to as the "retroactive date."  Id. at *9 (citing Long, *The Law of Liability Insurance*, §§ 12C.04[2][ii], 12C-65).  Thus, the purpose of the retroactive date is to limit coverage to claims made during the policy period that are based on events that take place after a particular date.  Id. at *9; see also Brander v. Nabors, 443 F. Supp. 764, 769-70 (N.D. Miss. 1978), *aff'd*, 579 F.2d 888 (5th Cir. 1978).  A claims-made policy that contains a retroactive date provision affords narrower coverage, and consequently has a lower premium, than a claims-made policy without such a provision.  Pritchard, 1995 WL 854775, at *9 (citing Nat'l Union Fire Ins. Co. of Pittsburgh v. Baker & McKenzie, 997 F.2d 305, 306 (7th Cir. 1993)).

1. Any actual or alleged negligent act, error or omission, or negligent misstatement or misleading statement by any **Agent** or its **Agency/Agency Staff** in the rendering of or failure to render **Professional Services**; or

2. Any actual or alleged negligent **Personal Injury** arising out of any **Agent's** or its **Agency/Agency Staff's** rendering of or failure to render **Professional Services**.

(Pl.'s Mot. Summ. J. Ex. L 00011 & 00016 (emphasis in original).)  The AAIC Policy also

contains the following endorsement:

**RETROACTIVE DATE AMENDATORY ENDORSEMENT**

In consideration of the premium charged, it is agreed and understood that, **III. DEFINITIONS O., Retroactive Date,** is deleted in its entirety and replaced by the following:

> **Retroactive Date** means the earlier of;
>
> 1.  The **Retroactive Date**, if any, shown on the **Agent's** Property/Casualty Insurance Agents' Errors and Omissions Liability Policy:
>
>> a.  Which immediately preceded the first policy American Automobile Insurance Company issued to the **Agent**; or
>>
>> b.  Which immediately preceded the date the **Agent** was first added to the American Automobile Insurance Company Policy, if the **Agent** was added after the inception date of the first American Automobile Insurance Company Policy, provided that there is no lapse in coverage between the termination date of that other policy and the inception date of coverage for the **Agent** under the American Automobile Insurance Company Policy.
>
>> If a lapse in coverage exists, the **Retroactive Date** shall be:
>>
>> a.  The inception date of the first Policy American Automobile Insurance Company issued to the **Agent**; or
>>
>> b.  The inception date of coverage when the **Agent** was

6

first added to the American Automobile Insurance Company Policy, if the **Agent** was added after the inception date of the first American Automobile Insurance Company Policy.

2. The **Retroactive Date** for the **Sponsoring Company** shall be the same as is applicable to the **Agent** whose **Wrongful Act** gave rise to the **Claim** against the **Sponsoring Company**, and the **Retroactive Date** for the **Agency/Agency Staff** shall be the same as is applicable to the **Agent** who is responsible for such **Agency/Agency Staff**.

**All other terms and conditions remain unchanged.**

(Id. at 00037 (emphasis in original).)  Interrogatory No. 9 to Murray in this matter is as follows: "State whether you had any lapses in your errors and omissions liability coverage during the period from January 1, 2000 to January 1, 2007, and identify and state the dates of any such lapses in coverage."  Murray's response to Interrogatory No. 9 is as follows:  "Yes.  February 17, 2001 through April 5, 2001; April 4, 2004 through November 23, 2004; and November 25, 2005 through December 31, 2005."  (Pl.'s Mot. Summ. J. Ex. O ¶¶ 7 & 9.)  Accordingly, Murray had a lapse in coverage from November 25, 2005 to December 31, 2005, immediately preceding the January 1, 2006 effective date of the first AAIC policy that provided him coverage.  (Id.)

Murray tendered his defense to the Ennie Lawsuit to AAIC, and AAIC has been defending Murray against the Ennie Lawsuit under a reservation of rights to deny coverage and to seek recompense of all costs expended on Murray's behalf in the event it is determined that Murray is not entitled to coverage under the AAIC Policy for the Ennie Lawsuit.  (Pl.'s Mot. Summ. J. Exs. P & Q.)  On November 12, 2008, AAIC filed a Motion for Summary Judgment under Fed. R. Civ. P. 56, to which Murray and Easter each filed responses.  On November 13, 2008, Easter also filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

7

II.     **STANDARD OF REVIEW**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Anderson, 477 U.S. at 249. A factual dispute is material only if it might affect the outcome of the suit under governing law. Id. at 248.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex, 477 U.S. at 325). Further, the non-moving party has the burden of producing evidence to establish prima facie each element of its claim. Celotex, 477 U.S. at 322-23. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper. Id. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

**III.**     **DISCUSSION**

**A.**     **"Retroactive Date" of the AAIC Policy**

AAIC argues that the lapse provision in the amendatory endorsement applies to Murray and makes the retroactive date of the AAIC Policy January 1, 2006 – the Policy's inception date. However, Easter and Murray argue that the retroactive date of the AAIC Policy is November 24, 2004 because that is the retroactive date shown on Murray's errors and omissions liability policy which "immediately preceded" the first policy AAIC issued to Murray.

Pennsylvania courts interpret insurance contracts as a matter of law.  See Home Ins. Co. v. Law Offices of Jonathan DeYoung, P.C., 32 F. Supp. 2d 219, 223 (E.D. Pa. 1998).  The court must read the insurance policy as a whole and "its terms, when unambiguous, must be construed according to their plain and ordinary meaning."  Jacobs Constructors, Inc. v. NPS Energy Servs., 264 F.3d 365, 376 (3d Cir. 2001).  The policy's language should not be tortured to create ambiguities; rather, the policy should be read to avoid them, if possible.  See Home Ins. Co., 32 F. Supp. 2d at 223; see also St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co., 655 F.2d 521, 524 (3d Cir. 1981).  Furthermore, the policy should not be rendered ambiguous by the mere fact that the parties disagree as to the proper construction.  See Pizzini v. Am. Intern. Specialty Lines Ins. Co., 210 F. Supp. 2d 658, 667 (E.D. Pa. 2002).  Rather, a term is ambiguous only if it is reasonably susceptible to different constructions, is capable of being understood in more than one sense and is "obscure in meaning through indefiniteness of expression or has a double meaning . . . ."  Id.  "When the language of an insurance policy is clear and unambiguous, a court must enforce that language."  Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co., 432 F. Supp. 2d 488, 495 (E.D. Pa. 2006); see also Assoc. Elec. & Gas Ins. Servs., Ltd. v. Rigas, 382 F. Supp. 2d

685, 697 (E.D. Pa. 2004).

      The amendatory endorsement in the AAIC Policy is poorly drafted, but that is not to say its language is ambiguous.  The relevant language begins with "**Retroactive Date** means the earlier of; 1. The **Retroactive Date**, if any, shown on the **Agent's** Property/Casualty Insurance Agents' Errors and Omissions Liability Policy: a. Which immediately preceded the first policy American Automobile Insurance Company issued to the **Agent**; or b. . . . ."  It is reasonable to assume that the semicolon following "earlier of" is a typographical error; otherwise, the endorsement language would not make sense.  After making this assumption, it appears from examining *this language alone* that the endorsement could be reasonably interpreted to support Easter's argument.  Indeed, the first policy issued by AAIC to Murray was the AAIC Policy covering the period January 1, 2006 through January 1, 2007.  If the term "immediately" is construed to mean "next in line,"[2] it may be reasonable to conclude that the AAIC Policy was immediately preceded by the United States Liability Insurance Company policy covering the period November 24, 2004 through November 24, 2005.  Under such an interpretation, the retroactive date for the AAIC Policy would be November 24, 2004 because the certificate of insurance for the United States Liability Insurance Company policy has a retroactive date of November 24, 2004.  This date would be earlier than AAIC's asserted retroactive date of January 1, 2006, and thus, our analysis would end at paragraph 1.a.

      However, Pennsylvania law instructs that the policy must be read as a whole.  See Jacobs Constructors, 264 F.3d at 376.  An examination of the remainder of the endorsement reveals language concerning a lapse in coverage.  As AAIC notes, the lapse language

---

[2] See Black's Law Dictionary 749 (6th ed. 1990) (defining "immediate").

is designed to limit AAIC's risk when an agent that is uninsured for a period of time before becoming insured under an AAIC policy is added to the policy, and to clarify that AAIC is not responsible for wrongful acts commencing in periods where the agent is insured by a different carrier or where the agent is uninsured.

(Pl.'s Resp. Def.'s Mot. Summ. J. 4 n.2.)  Just as we must reasonably assume the semicolon following "earlier of" is a typo in order for the endorsement to make sense, so must we reasonably assume that the indentation of the lapse provision – which gives the appearance that the lapse provision modifies paragraph 1.b. – is erroneous.  If the lapse provision is read to only apply to paragraph 1.b., the provision would never apply because the analysis would end after paragraph 1.a., which, under Easter's interpretation, ignores any gap in coverage without regard to the extent of its duration.  As AAIC points out,

taking Easter's unsubstantiated argument to its illogical extreme, if Murray were uninsured for a long period of time and, for instance, his most recent previous policy was in effect from November 24, 1975 to November 24, 1976, and he had a thirty year gap in coverage, according to Easter's argument, he would have a November 1975 retroactive date under the AAIC policy.  Such a result is nonsensical, and is not what was contemplated by the plain language of the endorsement.

(Pl.'s Resp. Def.'s Mot. Summ. J. 6.)  The argument that Murray's policy in effect from November 24, 2004 through November 24, 2005 "immediately preceded" the AAIC policy fails to read the policy as a whole, rendering the lapse language in the endorsement superfluous.  Therefore, the only reasonable way to interpret the endorsement *as a whole* is to give effect to the lapse provision in all instances of lapse in coverage, notwithstanding the provision's mis-indentation.  Murray agrees that the inception date of his first AAIC policy is January 1, 2006 and that he had a lapse in coverage immediately before this date, from November 25, 2005 through December 31, 2005.  (Pl.'s Mot. Summ. J. Ex. O ¶¶ 7 & 9.)  Accordingly, this Court

finds that January 1, 2006 – the inception date of the AAIC Policy – is Murray's retroactive date under the AAIC Policy.

**B.     Date of the "Wrongful Act"**

For coverage under the AAIC Policy to apply, the claim and wrongful acts alleged against Murray must have occurred "wholly after" the retroactive date of January 1, 2006.  AAIC argues that Murray's alleged wrongful conduct began in 2002 when he originally failed to place liquor liability coverage for Ennie under the Century policy that was placed in 2002 and renewed for the next four years.  Easter and Murray argue that the claim for which Murray seeks coverage is for a wrongful act occurring wholly on the date of the automobile accident.  To support their argument, Easter cites this Court's language in Home Indem. Co. v. Alexander & Alexander, Inc., stating "[p]roof of damages is an essential element of any negligence claim."  No. 89-7715, 1990 U.S. Dist. LEXIS 15675 (E.D. Pa. Nov. 20, 1990).  Easter then discusses a number of cases interpreting "occurrence" policies, arguing that the rationale of these cases is "equally applicable" to claims-made policies, such as the AAIC Policy at issue.  Easter argues:

> [F]or coverage purposes, the wrongful act giving rise to liability was the failure to insure that Ennie had the necessary coverage on the day of the accident.  Murray's failure to provide coverage on any day before that is simply "negligence in the air" that is, "negligence without an injury."  In any event, it is clear that Murray had met with the representative of Ennie, Inc. after January 1, 2006 to discuss insurance coverage.  Thus, even if the language of the policy is interpreted in a way that does not tie the timing of the wrongful acts to the happening of an injury, the claim of Ennie, Inc. against Murray is certainly based upon wrongful acts occurring after January 1, 2006, the date which plaintiff contends is a retroactive date.

(Def.'s Resp. Pl.'s Mot. Summ. J. 6 (internal citations omitted).)

Easter's argument that Murray's wrongful act is isolated to the date of the accident is

unpersuasive.  A "wrongful act" is defined in the AAIC Policy as "[a]ny actual or alleged negligent act, error or omission, or negligent misstatement or misleading statement . . . ."  An "occurrence," on the other hand, "happens when the injurious effects of the negligent act first manifest themselves in a way that would put a reasonable person on notice of injury."  D'Auria v. Zurich Ins. Co., 507 A.2d 857, 861 (Pa. Super. Ct. 1986).  The definition of "occurrence" set forth by the Pennsylvania Superior Court suggests that a negligent act (ie., a "wrongful act") and the resulting damages may occur at different times.  For example, in Arant v. Signal Ins. Co., negligent advice was provided to a client prior to the effective date of the insured's professional liability insurance coverage.  136 Cal. Rptr. 689 (Cal. Ct. App. 1977).  The insured argued that the policy in effect at the time the negligent advice was retracted applied to the loss.  Id. at 690. In rejecting this argument, the court stated:

> The injury, or harm, in this case was done when the advice, later retracted as erroneous, was given . . . .  [The client], it is true, did not suffer damages until after the advice was given . . . .  Nevertheless, the policy cannot be extended to indemnify against the consequences of an act when the act itself took place beyond the limits of the policy period.

Id.

In this matter, Ennie alleges that Poeng asked Murray in 2000 about the risks associated with running a beer distributorship.  Murray, however, stated in his deposition that Poeng operated a deli before he operated a beer distributorship, and that he was unsure when Poeng purchased the beer distributorship.  Nevertheless, it is factually undisputed that Murray began placing Century coverage for Ennie in the fall of 2002.  (Pl.'s Mot. Summ. J. Ex. E ¶¶ 3-4.)  It is also clear that Poeng was operating a beer distributorship in 2005 when Ennie entered into the

13

December 9, 2005 renewal of the Century policy that was in effect on March 24, 2006.  It is further undisputed that Murray never placed liquor liability coverage for Ennie until after the Easter accident occurred.

Although Murray testified that Poeng visited him in early 2006 to discuss the price Ennie was paying for insurance (Def.'s Mot. Summ. J. Ex. B 60-61 & 101-03), the plain policy language mandates that, for coverage to apply, the wrongful act giving rise to the claim must occur "wholly after" the retroactive date.  This Court finds that the wrongful act in this matter occurred when Murray allowed Ennie to purchase an insurance policy under the mistaken belief that Ennie would be covered under that policy for all risks associated with running a beer distributorship.  Thus, Murray's failure to advise Ennie could not have occurred wholly after January 1, 2006 because the policy that was in effect on March 24, 2006 became effective on December 9, 2005.  While Murray's failure to properly advise Ennie may have continued into 2006, it began, at the latest, on December 7, 2005, when Poeng visited Murray and paid a portion of the 2006 Century policy premium.  Consequently, because Murray's "wrongful act" did not occur wholly after the AAIC Policy's January 1, 2006 retroactive date, Easter's Motion for Summary Judgment will be denied, and AAIC's Motion for Summary Judgment will be granted.

An appropriate Order follows.

14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                         :
AMERICAN AUTOMOBILE            :
INSURANCE COMPANY,              :
                                         :    CIVIL ACTION
                    Plaintiff,           :
                                         :
        v.                               :    No. 08-1680
                                         :
TYRONE MURRAY and TYRONE      :
MURRAY d/b/a/ OLNEY BUSINESS   :
CENTER; ENNIE, INC. d/b/a SAM'S :
BEER DISTRIBUTOR; and JAMES S. :
EASTER JR., INDIVIDUALLY AND AS :
THE ADMINISTRATOR OF THE       :
ESTATE OF JESSICA LYNNE EASTER, :
                                         :
                    Defendants.          :
                                         :
_____:

## ORDER

     **AND NOW**, this  15th   day of December, 2008, in consideration of the Motion for

Summary Judgment filed by Plaintiff American Automobile Insurance Company (Doc. No. 19)

and the Motion for Summary Judgment filed by Defendant James S. Easter, Jr. (Doc. No. 22),

and the responses thereto, it is hereby **ORDERED** that American Automobile Insurance

Company's Motion for Summary Judgment is **GRANTED** and James S. Easter, Jr.'s Motion for

Summary Judgment is **DENIED**.

                                BY THE COURT:


                                 /s/ Robert F. Kelly_____

                                ROBERT F. KELLY
                                SENIOR JUDGE